℀JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Pursuit Investment Management LLC, Pursuit Capital Partners (Cayman) Ltd., and Pursuit Capital Partners Master (Cayman) Ltd.

## DEFENDANTS
Origami Capital Partners, LLC, Origami Partners III, LP, Russell Alternative Investment Funds PLC, Russell Alternative Strategies Fund II PLC, et al.

**(b)** County of Residence of First Listed Plaintiff   Fairfield County, CT
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Cook County, IL
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
O'Rourke & Associates, LLC
27 Pine Street, New Canaan, CT 06840
(203) 966-6664

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332
Brief description of cause:
Declaratory Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE

DOCKET NUMBER

DATE
07/26/2012

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

O'ROURKE & ASSOCIATES, LLC
Brendan J. O'Rourke, Esq. (ct00522)
Lorey Rives Leddy, Esq. (ct19297)
27 Pine Street
New Canaan, CT 06840
Tel (203)966-6664
Fax (203)-966-5710
brendan@orourkeandassoc.com
lorey@orourkeandassoc.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PURSUIT INVESTMENT MANAGEMENT LLC, PURSUIT CAPITAL PARTNERS (CAYMAN) LTD., and PURSUIT CAPITAL PARTNERS MASTER (CAYMAN) LTD., | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | **JURY TRIAL DEMANDED** |
| vs. | ) ) ) | Case Number: _____ |
| ORIGAMI CAPITAL PARTNERS, LLC, ORIGAMI PARTNERS III, LP, RUSSELL ALTERNATIVE INVESTMENT FUNDS PLC, RUSSELL ALTERNATIVE STRATEGIES FUND II PLC, RUSSELL DIVERSIFIED ALTERNATIVES FUND – US BENEFIT PLANS, LTD, and RUSSELL CAPITAL, INC., | ) ) ) ) ) ) ) ) ) ) | **ECF CASE ELECTRONICALLY FILED** |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

Plaintiffs, by and through their attorneys, for their Complaint against Defendants allege

as follows:

### Nature of the Case

1.      This is an action by Pursuit Capital Partners (Cayman) Ltd., Pursuit Capital

Partners Master (Cayman) Ltd., and Pursuit Investment Management LLC (collectively,

"Plaintiffs") seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Defendants Russell Alternative Investment Funds PLC, Russell Alternative Strategies Fund II PLC, Russell Diversified Alternatives Fund – U.S. Benefit Plans, Ltd, and Russell Capital, Inc. (collectively, the "Russell Defendants") illegally assigned  their shares in Plaintiffs' funds  to Origami Capital Partners, LLC and Origami Partners III, LP (collectively, the "Origami Defendants") in breach of their contractual obligations to Plaintiffs.

2.       This action also seeks monetary damages from the Russell Defendants for breach of their contractual obligations to Plaintiffs and from the Origami Defendants for maliciously interfering with those obligations.

3.       As a result of the Russell Defendants' illegal assignment and the Origami Defendants' wrongful conduct in securing the same, Plaintiffs and their investors have been and continue to be harmed by their exposure to the Origami Defendants' improper attempts to extract money from the Plaintiffs' funds through a scorched earth litigation campaign in a foreign jurisdiction premised on the illegal assignment.

<u>**Parties**</u>

4.       Pursuit Capital Partners Master (Cayman) Ltd. (the "Pursuit Master Fund") is an exempted company with limited liability organized under the laws of the Cayman Islands with its principal place of business in Grand Cayman, Cayman Islands.

5.       Plaintiff Pursuit Capital Partners (Cayman) Ltd. (the "Pursuit Feeder Fund") is an exempted company with limited liability organized under the laws of the Cayman Islands with its principal place of business in Grand Cayman, Cayman Islands.

6.     Pursuit Investment Management LLC (the "Pursuit Investment Manager") is a limited liability company organized under the laws of Delaware with its principal place of business in Greenwich, Connecticut.

7.     Upon information and belief, Defendant Russell Capital, Inc. is a registered investment advisor and investment manager organized under the laws of the state of Washington, with a principal place of business in Seattle, Washington.

8.     Upon information and belief, Defendant Russell Alternative Investment Funds PLC is an investment fund organized under the laws of Ireland.

9.     Upon information and belief, Defendant Russell Alternative Strategies Fund II PLC is an investment fund organized under the laws of Ireland.

10.     Upon information and belief, Defendant Russell Diversified Alternatives Fund – U.S. Benefit Plans, LTD is an investment fund organized under the laws of the Cayman Islands.

11.     Upon information and belief, Defendants Russell Alternative Investment Funds PLC, Russell Alternative Strategies Fund II PLC and Russell Diversified Alternatives Fund – U.S. Benefit Plans, LTD are directed and controlled by Defendant Russell Capital, Inc., with a principal place of business in Seattle, Washington.

12.     Upon information and belief, Origami Capital Partners, LLC is an investment manager and limited liability company organized under the laws of Delaware, with a principal place of business in Chicago, Illinois.

13.     Upon information and belief, Defendant Origami Partners III, LP is an investment fund and is an Exempted Limited Partnership organized under the laws of the Cayman Islands.

14.     Upon information and belief, Defendant Origami Partners III, LP is directed and controlled by Defendant Origami Capital Partners, LLC and has a principal place of business in Chicago, Illinois.

### Jurisdiction and Venue

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and (2) because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and the dispute is between citizens of different states as well as citizens of a foreign state.

16.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to the claims occurred in this district.

### Allegations Common To All Counts

*Pursuit Feeder/Master Fund*

17.     In March 2005, the Pursuit Feeder Fund and the Pursuit Master Fund were both incorporated as open-ended investment companies dealing primarily in fixed income mortgage-backed securities, generally purchased at distressed levels.

18.     The Pursuit Investment Manager, pursuant to certain Investment Management Agreements, acted as an investment manager to the Pursuit Master Fund and the Pursuit Feeder Fund.

19.     The Pursuit Master Fund and the Pursuit Feeder Fund operated as part of a master/feeder structure under which the only substantial assets owned by the Pursuit Feeder Fund were shares in the Pursuit Master Fund.

20.     On or around November 1, 2006, Defendants Russell Alternative Investment Funds PLC, Russell Alternative Strategies Fund II PLC, and Defendant Russell Diversified

Alternatives Fund – U.S. Benefit Plans, Ltd. (collectively, the "Russell Fund Defendants")

became investors in the Pursuit Feeder Fund.

21.     Upon information and belief, the Russell Fund Defendants made their investment

decisions pursuant to direction from Defendant Russell Capital, Inc.

22.     The Origami Defendants have never been and currently are not investors in the

Pursuit Feeder Fund or the Pursuit Master Fund.

*The Pursuit Feeder Fund Governing Documents*

23.     Like all investors in the Pursuit Feeder Fund, the Russell Fund Defendants made

their investments pursuant to a Subscription Agreement and Investor Suitability Letter (the

"Subscription Agreement").

24.     The Subscription Agreement incorporated a Confidential Offering Memorandum,

as modified and updated from time to time (the "Offering Memorandum"), and a Memorandum

and Articles of Association of Pursuit Feeder Fund, as modified and updated from time to time

(the "Articles of Association", together with the Subscription Agreement and the Offering

Memorandum, the "Governing Documents").

25.     Collectively, the Governing Documents set forth the terms and conditions for

investment in the Pursuit Feeder Fund.

26.     The Russell Fund Defendants each executed the Subscription Agreement.

27.     All drafts of such documents were exchanged between the Russell Defendants

and the Pursuit Investment Manager, located in Greenwich, Connecticut, and other electronic

and telephonic communications regarding those drafts and the investment in the Pursuit Feeder

Fund were held with representatives of the Pursuit Investment Manager located in Connecticut.

*Investor Eligibility in the Pursuit Feeder Fund*

28.     Among the terms and conditions set forth in the Governing Documents were a number of limitations on investor eligibility.

29.     The cover page of the Offering Memorandum provided for a minimum subscription of $10 million for Class A shares, which would be "available to only non-U.S. persons and U.S. tax exempt investors who are financially sophisticated, high net-worth investors."

30.     The cover page of the Subscription Agreement likewise set forth that "[t]he Shares being offered hereby are offered only to subscribers who are non-U.S. persons or U.S. tax-exempt investors who are financially sophisticated, high net-worth investors."

31.     The "Eligible Investors" section of the Offering Memorandum limited eligible investors to "non-U.S. investors who are 'accredited investors' as defined in Regulation D of the rules promulgated under the Securities Act of 1933, as amended (the 'Securities Act') and certain U.S. tax exempt investors and accounts."

32.     Paragraph 3(B) of the Subscription Agreement likewise required that each investor expressly warrant that it was "not a U.S. person" or was "a U.S. tax-exempt Investor."

33.     The "Eligible Investors" and "Risk Disclosure" sections of the Offering Memorandum both state that investors "should: (i) only purchase Shares with genuine risk capital; and (ii) be able to sustain the loss of their entire investment."

34.     Upon information and belief, at all relevant times, the Russell Fund Defendants have been Eligible Investors as defined under the Governing Documents.

35.     Upon information and belief, the Origami Defendants are U.S. persons, have never been, and currently are not Eligible Investors as defined under the Governing Documents.

*Plaintiffs' Gate-keeping Authority over Investment in the Pursuit Feeder Fund*

36.     The Governing Documents also provided Plaintiffs with broad gate-keeping authority to accept or deny prospective investors, even Eligible Investors, as shareholders in the Pursuit Feeder Fund.

37.     The "Eligible Investors" and "Risk Disclosure" sections of the Offering Memorandum both provided that, notwithstanding investor eligibility, "[t]he Investment Manager may reject, in whole or in part, any subscription in its sole discretion."

38.     Likewise, the "Subscription Agreement" section of the Offering Memorandum provided that "no subscriber will become a shareholder unless accepted by the Fund" and that "[t]he Fund and its Directors may reject any subscription in its sole discretion."

39.     Plaintiffs accepted the Russell Fund Defendants' investment in the Pursuit Feeder Fund, and authorized the issuance of shares to them in accordance with their investment.

40.     At no time did Plaintiffs accept or authorize any investment or holdings in the Pursuit Feeder Fund by the Origami Defendants.

*Express Limitations on the Transfer of Any Interest in the Pursuit Feeder Fund*

41.     The Governing Documents further regulated access to the Pursuit Feeder Fund by providing strict limits on the power of investors to transfer their interests in the Fund.

42.     Pursuant to Paragraph 3(F) of the Subscription Agreement, investors represented and warranted that each was "acquiring the Shares [in the Fund] for its own account, for investment only, and not with a view toward the resale, transfer or further distribution thereof."

43.     In addition, the "Transfer of Shares" section of the Articles of Association provided that shares in the Pursuit Feeder Fund "may not be Transferred without the prior written approval of the Directors (which may be withheld for any or no reason) provided that the

Directors may waive this requirement to the extent that they deem appropriate in connection with the listing of any class or series of Share on a stock exchange."

44.     Likewise, pursuant to Paragraph 3(F) of the Subscription Agreement, investors acknowledged that "without the prior written consent of the Fund (which consent may be withheld for any reason or for no reason)" they were under a duty not to "sell or otherwise transfer the[ir] Shares or any interest therein to a U.S. Person."

45.     Finally, The Offering Memorandum provided in all capital letters that "THE FUND'S SHARES MAY NOT BE SOLD OR TRANSFERRED DIRECTLY OR INDIRECTLY, IN THE UNITED STATES OR TO ANY UNITED STATES PERSON."

46.     The Offering Memorandum contained a definition of "UNITED STATES PERSON" that excluded "(1) A NATURAL PERSON WHO IS NOT A RESIDENT OF THE UNITED STATES; (2) A PARTNERSHIP, CORPORATION OR OTHER ENTITY, OTHER THAN AN ENTITY ORGANIZED PRINCIPALLY FOR PASSIVE INVESTMENT, ORGANIZED UNDER THE LAWS OF A NON-U.S. JURISDICTION AND WHICH HAS ITS PRINCIPAL PLACE OF BUSINESS IN A NON-U.S. JURISDICTION."

47.     As set forth in the paragraphs below, the Russell Fund Defendants breached these contractual obligations by transferring their interest in the Pursuit Feeder Fund to Defendant Origami Partners III, LP, without soliciting or receiving Plaintiffs' consent to do so.

### The Investment Strategy and the Economic Downturn

48.     In addition to outlining the policies of the Pursuit Feeder Fund, the Offering Memorandum also, among other things, set forth its investment objectives.

49.     The Offering Memorandum stated that the "industry sectors the Investment Manager expects to participate in include: residential mortgage, manufactured housing, business

loans, franchise loans, home equity loans, aircraft and Collateralized Debt Obligations ("CDOs").  The Investment Manager may use up 1-2 times leverage.  There can be no assurances that the Investment Manager's investment objectives will be achieved."

50.     The Offering Memorandum further warned of a "risk that conditions in these markets will not materially improve (and may deteriorate further within the Funds investment horizon), thereby preventing the Fund from profiting on its investments."

51.     Given the nature of the investment strategy, the global financial crisis that affected the financial markets in 2007 and 2008 caused significant liquidity challenges to the Pursuit Investment Manager, the Pursuit Master Fund and the Pursuit Feeder Fund.

52.     In response to this unprecedented turn of events, the Investment Manager began to develop strategies to maximize, and protect as much as possible, shareholder interests.

53.     One of the steps taken by the Pursuit Master Fund and the Pursuit Feeder Fund, in conjunction with the Investment Manager, was to suspend all redemptions of investments and the calculation of net asset value.  This was necessary because the collapse in the markets created a situation where available prices for securities held by the Pursuit Master Fund did not accurately reflect the value of such securities.  Had the Investment Manager immediately liquidated the funds, all the shareholders would have suffered, and the Russell Fund Defendants whose investments were still subject to lock-up would have suffered disproportionately.  Investors in the Pursuit Feeder Fund were informed of this suspension decision in February 2008.

54.     In January 2009, the Investment Manager developed a plan to give investors the opportunity to remain investors in the Pursuit Feeder Fund or redeem their investment.  Investors were presented with two options, one where their interest was to be redeemed in exchange for a pro rata portion of available cash and in-kind distribution of securities, and the other where

investors were to maintain their interest in the fund, subject to an 18-month lock-up.  A portion

of the cash distribution for those investors choosing to redeem their shares in the Fund would be

held back to pay certain expenses, including any contingent expenses.

55.     The Russell Defendants objected to the options, and the dispute eventually

resulted in litigation in the Cayman Islands.

56.     On March 9, 2009, the Russell Fund Defendants communicated via telephone

with Plaintiffs' Investment Manager in Connecticut in an attempt to resolve the litigation in the

Cayman Islands and agreed, in principal, to terms to resolve the dispute.

*Deed of Settlement between Plaintiffs and the Russell Fund Defendants*

57.     On or about April 1, 2009, the Russell Fund Defendants and the Plaintiffs entered

into a Deed of Settlement that settled the Cayman Islands litigation and set forth the terms under

which the Russell Fund Defendants would redeem their shares in the Pursuit Feeder Fund (the

"Deed of Settlement").

58.     The Origami Defendants were not parties to the Deed of Settlement.

59.     Plaintiffs and the Russell Fund Defendants agreed that the Deed of Settlement

was subject to and complied with the terms of the Governing Documents.

60.     The benefits flowing to the Russell Fund Defendants from the Deed of Settlement

were based on the shares the Russell Fund Defendants held in the Pursuit Feeder Fund.

61.     The payment provisions set forth in Paragraph 1 of the Deed of Settlement

explicitly equated the Russell Fund Defendants' share ownership in the Pursuit Feeder Fund with

the redemption proceeds they were owed.

62.     Specifically, pursuant to Paragraph 1(A)(vi) of the Deed of Settlement, Plaintiffs

agreed that the Russell Fund Defendants' redemption proceeds would "hav[e] a value equal to

the difference between the net asset value of Russell's shares in the Fund on March 31, 2009 and the amount . . . to be distributed to Russell pursuant to paragraph 1(A)(ii)." Paragraph 1(A)(ii), in turn, entitled the Russell Fund Defendants to receive 60% of the value of their share redemption requests in available cash, and the rest in certain securities held by the Pursuit Master Fund.

63.     In addition, pursuant to Paragraph 1(A)(iii) of the Deed of Settlement -- under which the Russell Fund Defendants undertook to create a special vehicle (the "Nominee") to receive all redemption proceeds from Plaintiffs -- the Russell Fund Defendants expressly represented that the Nominee would be owned by each of the Russell Fund Defendants "in the same proportion in which each is currently invested in the Fund."

64.     Paragraph 1(C) of the Deed of Settlement provided that all settlement distributions would be subject to "reserves and holdbacks [] relating to reasonable expenses, including legal, administrative and accounting expenses."

*Plaintiffs' Payment to the Russell Fund Defendant, Withheld Reserves, and Ongoing Expenses*

65.     Pursuant to the Deed of Settlement, Plaintiffs remitted to the Russell Fund Defendants an amount of cash and assets worth more than $144,000,000.

66.     As expressly contemplated by the Deed of Settlement, Plaintiffs held back limited funds and assets to pay for certain fund expenses.  The withheld funds equaled $4,337,297.87.

67.     Upon information and belief, the rate applied to determine the withheld funds, amounting to 3% of the total redemption proceeds remitted to the Russell Fund Defendants, is markedly lower than the rate used under standard industry practice, which is 5-10% of total withdrawals/redemptions.

68.     The Russell Fund Defendants did not object to this holdback, nor could they, given that it was made consistent with the terms of the Offering Memorandum and the Deed of Settlement.

*The Defendants Execute an Illegal Deed of Assignment*

69.     Nevertheless, on or about January 7, 2011, the Russell Fund Defendants secretly executed a Deed of Assignment with Defendant Origami Partners III, LP (the "Deed of Assignment").

70.     Upon information and belief, the Russell Fund Defendants executed the Deed of Assignment at the direction of their investment management company, Defendant Russell Capital, Inc.

71.     Upon information and belief, Defendant Origami Partners III, LP executed the Deed of Assignment at the direction of its General Partner, Defendant Origami Capital Partners, LLC.

72.     The Deed of Assignment purported to assign to Defendant Origami Partners III, LP the Russell Fund Defendants' rights under the Deed of Settlement.

73.     In doing so, the Deed of Assignment purported to effect a transfer to Defendant Origami Partners III, LP of the Russell Fund Defendants' underlying interest in the Pursuit Feeder Fund.

74.     Upon information and belief, all Defendants were aware of industry practice requiring that any transfer of an investor's interest in a fund be made with the knowledge and consent of the fund's manager.

75.     In addition, the Russell Defendants were aware of the limitations on transferability and eligibility expressly set forth in the Governing Documents and incorporated by reference into the Deed of Settlement.

76.     Upon information and belief, the Origami Defendants were also aware of such limitations.

77.     Nevertheless, neither the Russell Defendants nor the Origami Defendants ever asked for or received Plaintiffs' consent to perform the transfer, instead electing to execute the Deed of Assignment in secret.

78.     Because, among other reasons, Defendant Origami Partners III, LP was not an Eligible Investor as defined under the Governing Documents, the Russell Fund Defendants executed the assignment in breach of their obligations under the Governing Documents.

### *Additional Evidence of Bad Faith in Drafting and Executing the Deed of Assignment*

79.     In addition to their failure to provide notice or obtain consent from Plaintiffs as to the Deed of Assignment, Defendants engaged in additional malfeasance in drafting and executing the instrument.

80.     Pursuant to Paragraph 4(4) of the Deed of Assignment, the Russell Fund Defendants purported to represent and warrant that the assignment did "not conflict with, contravene or . . . breach [] the Deed of Settlement and/or the governing or constitutional documents of the [Pursuit Feeder] Fund."

81.     The Russell Fund Defendants made this representation, and the Origami Defendants accepted it, in bad faith.  For the reasons set forth above, it was plainly evident that assignment of interest without the consent of Plaintiffs and made to U.S. persons such as the Origami Defendants, was a patent violation of the Governing Documents.

*The Origami Defendants' Improper Attempts to Extract Money from Plaintiffs*

82.     Having improperly obtained the purported Deed of Assignment, representatives of the Origami Defendants contacted Plaintiffs' representatives in Greenwich, Connecticut and demanded payment of the funds that had been held back.

83.     On January 21, 2011, a representative of the Origami Defendants contacted Plaintiffs' representatives in Connecticut by telephone to make an initial demand of the holdback funds.

84.     On January 26, 2011, the same Origami representative transmitted an email to Plaintiffs' representative in Connecticut wherein he again demanded payment and noted the "importan[ce] that the remaining monies due are paid to us soon."

85.     After confirming that the Origami Defendants had reviewed the Governing Documents setting forth the Russell Fund Defendants' obligation, Plaintiffs refused to discuss or provide payment of the holdback funds to the Origami Defendants.

86.     On or about February 24, 2011, Defendant Origami Partners III, LP commenced an action against Plaintiffs in the Cayman Islands demanding payment of the portion of the Russell Fund Defendants' redemption that was held back, specifically $4,339,297.87.

87.     Upon information and belief, Defendant Origami Partners III, LP commenced the action at the direction and control of its General Partner, Defendant Origami Partners, LLC.

88.     The Russell Fund Defendants' former attorney, Mr. Fraser Hughes of the firm Conyers Dill & Pearman, who negotiated the Deed of Settlement on behalf of the Russell Fund Defendants, now represents Defendant Origami Partners III, LP in its action against Plaintiffs.

89.     As a result of the collusion between the Russell Defendants and the Origami Defendants, Plaintiffs have incurred significant legal fees and expenses defending themselves in

the litigation, which Plaintiffs had thought had been resolved through careful negotiation and a settlement agreed to in good faith with the Russell Fund Defendants.

### First Cause of Action as Against All Defendants:
### Request for Declaratory Judgment

90.     Plaintiffs incorporate paragraphs 1 through 89 as if fully set forth herein.

91.     The Origami Defendants are not investors in the Pursuit Feeder Fund or the Pursuit Master Fund.

92.     The Origami Defendants are neither parties to the Deed of Settlement, which resolved certain disputes arising under the Governing Documents, or to the Governing Documents themselves, and thus there is no contract privity between Plaintiffs and the Origami Defendants.

93.     The Deed of Settlement and the redemption reflected therein was made pursuant to the Governing Documents.

94.     Pursuant to the terms of the Governing Documents, the Russell Fund Defendants could not transfer or assign their interests in the Pursuit Feeder Fund without the express consent of the Directors of the Pursuit Feeder Fund.  The terms of the Governing Documents further precluded the Russell Fund Defendants from transferring or assigning their interests in the Pursuit Feeder Fund to a U.S. Person.

95.     The Russell Fund Defendants never solicited or obtained Plaintiffs' consent for *any* assignment or transfer, let alone to U.S. persons such as the Origami Defendants. Nevertheless, they executed a Deed of Assignment with Defendant Origami Partners III, LP purporting to do just that.

96.     The Deed of Assignment was thus a blatant breach of the Russell Defendants' contractual obligations to Plaintiffs.

97.    Accordingly, Plaintiffs respectfully request that this Court issue a declaratory judgment confirming that the Deed of Assignment is illegal and unenforceable.

## Second Cause of Action as Against the Russell Defendants
### Breach of Contract

98.    Plaintiffs incorporate paragraphs 1 through 97 as if fully set forth herein.

99.    For the reasons set forth in the foregoing paragraphs, the Russell Defendants breached their contractual obligations to Plaintiffs, set forth in the Articles of Association, the Offering Memorandum, and the Subscription Agreement incorporating the same.

100.    Plaintiffs at all times complied with their contractual obligations.

101.    As a result of the Russell Defendants' breach of their contractual obligations to Plaintiffs, the Russell Defendants have caused damage to Plaintiffs by exposing them to suit by the Origami Defendants.

102.    The Origami Defendants, which operate a vulture fund that is the exact opposite of a passive investor, commenced an action in the Cayman Islands purporting to enforce the Deed of Settlement to which they are not parties and under which they have no rights.

103.    As a direct, proximate, and foreseeable cause of the Origami Defendants' improper attempts to enforce an agreement to which they are not a party, Plaintiffs have suffered substantial damages well in excess of $75,000 and will likely sustain substantially more in damages.

## Third Cause of Action as Against the Origami Defendants:
### Tortious Interference with Contract Relations

104.    Plaintiffs incorporate paragraphs 1 through 103 as if fully set forth herein.

105.    The Russell Fund Defendants assumed contractual obligations to Plaintiffs under the Subscription Agreement, and the Governing Documents incorporated therein.

106.   The Origami Defendants were aware of these obligations and of the nature of the investor-fund relationship between the Russell Fund Defendants and Plaintiffs.

107.   Specifically, the Origami Defendants knew, both based on common industry practice and the express terms of the Governing Documents, that the Russell Fund Defendants could not unilaterally assign their interest to a third party.

108.   Furthermore, they knew or recklessly disregarded knowing that the Russell Fund Defendants were contractually precluded from transferring their interest in the Pursuit Feeder Fund to U.S. persons, such as the Origami Defendants.

109.   Upon information and belief, the Origami Defendants intentionally interfered with these contractual obligations by drafting and executing a Deed of Assignment with the Russell Fund Defendants, which, by its terms, breached those obligations.

110.   The Origami Defendants knew or recklessly disregarded knowledge that the Russell Fund Defendants falsely represented that the Deed of Assignment complied with the Russell Fund Defendants' contractual obligations to Plaintiffs, and nevertheless improperly accepted that representation.

111.   Furthermore, the Origami Defendants executed the Deed of Assignment in secret, without seeking to solicit or obtain Plaintiffs' notification or consent, which they knew or should have known was required.

112.   The Origami Defendants acted in this manner with improper intent in order to extract payment from and leverage over Plaintiffs through litigation.

113.   The Origami Defendants' interference and subversion of the Russell Fund Defendants' contractual relations with Plaintiffs has resulted in significant harm to Plaintiffs,

who have incurred significant legal expenses defending themselves in the litigation in the Cayman Islands and whose funds are now subject to loss.

### Fourth Cause of Action as Against the Origami Defendants:
### Tortious Interference with Business Expectancies

114.   Plaintiffs incorporate paragraphs 1 through 113 as if fully set forth herein

115.   The Russell Fund Defendants are investors and Plaintiffs are investment entities and managers engaged in a business relationship.

116.   At all relevant times, the Origami Defendants were aware of Plaintiffs' and the Russell Fund Defendants' business relationship.

117.   The Origami Defendants knew or recklessly disregarded knowledge that the Russell Fund Defendants' beneficial interest in that relationship could not be unilaterally assigned or transferred to a U.S. person.

118.   The Origami Defendants nevertheless secured a Deed of Assignment from the Russell Fund Defendants which purported to do just that.

119.   In doing so, and by subsequently demanding payment from Plaintiffs based on the Russell Fund Defendants' interest in the Pursuit Feeder Fund, the Origami Defendants have intentionally interfered with the nature and terms of Plaintiffs' business relationship with the Russell Fund Defendants.

120.   The Origami Defendants acted in this manner with improper intent in order to extract payment from and leverage over Plaintiffs through litigation.

121.   The Origami Defendants' interference and subversion of the Russell Fund Defendants' business relations with Plaintiffs has resulted in significant harm to Plaintiffs, who

have incurred significant legal expenses defending themselves in the litigation and whose funds are now subject to loss.

## Prayer for Relief

WHEREFORE, Plaintiffs demand the following relief against Defendants:

A.      A declaration that the Deed of Assignment is illegal and in breach of the Offering Memorandum, the Articles of Association, and/or the Subscription Agreement.

B.      Compensatory damages against each of the Russell Defendants for breach of contract in an amount to be determined at trial;

C.      Compensatory damages against each of the Origami Defendants for tortious interference with contract relations in an amount to be determined at trial;

D.      Compensatory damages against each of the Origami Defendants for tortious interference with business expectancies in an amount to be determined at trial;

E.      Pre-judgment interest, attorneys' fees, and costs;

F.      Punitive damages from each Defendant; and

G.      Such other and further relief as the Court deems just, reasonable, and appropriate in the circumstances.

Dated:      New Canaan, CT
            July 26, 2012

            _____
            Brendan J. O'Rourke, Esq. (ct 00522)
            Lorey Rives Leddy, Esq. (ct 19297)
            O'ROURKE & ASSOCIATES, LLC
            27 Pine Street
            New Canaan, CT 06840
            Tel (203)966-6664
            Fax (203)-966-5710
            brendan@orourkeandassoc.com
            lorey@orourkeandassoc.com

-and-

Tai H. Park
Eyal Dror
(*pro hac vice* applications pending)
PARK & JENSEN, LLP
630 Third Avenue
New York, NY 10017
Telephone:  (646) 200-6300
Facsimile:  (646) 200-6301
tpark@parkjensen.com

*Attorneys for Plaintiffs*

-and-

Tai H. Park
Eyal Dror
(*pro hac vice* applications pending)
PARK & JENSEN, LLP
630 Third Avenue
New York, NY 10017
Telephone:  (646) 200-6300
Facsimile:  (646) 200-6301
tpark@parkjensen.com
edror@parkjensen.com

*Attorneys for Plaintiffs*