WOLLMUTH MAHER & DEUTSCH LLP
William F. Dahill (ct 20008)
David. H. Wollmuth (*pro hac vice* pending)
Michael P. Burke (*pro hac vice* pending)
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
Attorneys for Defendants
Origami Capital Partners, LLC and
Origami Partners III, LP

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| PURSUIT INVESTMENT MANAGEMENT LLC, PURSUIT CAPITAL PARTNERS (CAYMAN) LTD., and PURSUIT CAPITAL PARTNERS MASTER (CAYMAN) LTD., <br><br> Plaintiffs, <br> vs. <br><br> ORIGAMI CAPITAL PARTNERS, LLC, ORIGAMI PARTNERS III, LP, RUSSELL ALTERNATIVE INVESTMENT FUNDS PLC, RUSSELL ALTERNATIVE STRATEGIES FUND II PLC, RUSSELL DIVERSIFIED ALTERNATIVES FUND – US BENEFIT PLANS, LTD, and RUSSELL CAPITAL, INC., <br><br> Defendants. | Case Number: 3:12-cv-01089-SRU <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS ORIGAMI CAPITAL PARTNERS, LLC,**
**AND ORIGAMI PARTNERS III, LP'S MOTION TO DISMISS**

December 10, 2012

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.  THE ACTION SHOULD BE DISMISSED BECAUSE IT WAS BROUGHT IN THE WRONG FORUM ................................................................................................. 2

    A.  The Court Should Dismiss The Action Because The Forum Selection Clause Requires The Claims To Be Brought In The Cayman Islands .................... 2

    B.  The Action Should Be Dismissed Based On Foreign-Comity Abstention ............. 3

    C.  The Court Should Dismiss The Action Based On The Doctrine Of Forum Non Conveniens ...................................................................................................... 4

II. THE CLAIMS AGAINST ORIGAMI SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ......................................................................................... 4

    A.  The Court Lacks Personal Jurisdiction Under The Connecticut Long-Arm Statute ..................................................................................................................... 4

    B.  The Exercise Of Jurisdiction Over Origami Would Not Comport With Due Process ................................................................................................................... 6

III. THE CLAIMS AGAINST ORIGAMI SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..................................................................................................... 7

    A.  The Complaint Fails To State A Claim For A Declaratory Judgment Because Pursuit Cannot Establish A Breach Of Contract ..................................... 7

    B.  The Complaint Fails To State A Claim For Tortious Interference Under Connecticut Law .................................................................................................... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Amberbelle Corp. v. Hommell*, 272 F. Supp. 2d 189 (D. Conn. 2003) ............................................ 5

*Bacarella Transp. Services, Inc. v. J.M. Logistics, LLC*, 3:11-CV-00147-WWE, 2011 WL 4549400 (D. Conn. 2011) ................................................................................................... 6

*Cody v. Ward*, 954 F. Supp. 43 (D. Conn. 1997) ........................................................................... 6

*Delcath Sys., Inc. v. Enney*, 2006 WL 1525986 (D. Conn. 2006) ................................................... 7

*Doe v. Ciolli*, 611 F. Supp. 2d 216 (D. Conn. 2009) ..................................................................... 6

*Heyman v. Com. & Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975) ................................................ 8

*Jane Doe One v. Oliver*, 34 Conn. L. Rptr. 634, 2003 WL 21235402 (Conn. Super. 2003) ......... 7

*Leslie Fay, Inc. v. Rich*, 478 F. Supp. 1109 (S.D.N.Y. 1979) ......................................................... 8

**Statutes**

Conn Gen. Stat. § 52-59b ....................................................................................................... 4, 5, 6

**PRELIMINARY STATEMENT**

Origami's opening memorandum (the "Origami Memorandum")[1] revealed the Complaint for what it is – a transparent attempt to interfere with the long-running Cayman litigation that, despite Pursuit's delay tactics, is about to proceed to trial on January 29, 2013.  The Court should dismiss the Complaint on several grounds, each of which is itself dispositive.  *First*, the action was brought in the wrong forum.  The forum selection clause in the Deed of Settlement expressly mandates the Cayman Islands as the proper forum; the filing of the action violates foreign-comity-abstention principles; and Connecticut is an inconvenient forum.  *Second*, the claims against Origami should be dismissed for lack of personal jurisdiction.  The only Origami contact with Connecticut alleged in the Complaint or identified in the Pursuit Memorandum is one email and one telephone call, neither of which form the basis of Pursuit's tort claims.  *Third*, Pursuit's allegations fail to state a claim.  The Deed of Settlement expressly superseded and extinguished all claims under the Governing Documents, and therefore bars Pursuit's contract and declaratory judgment claims.  Pursuit's tortious interference claims fail because an event essential to those claims (its success in the Cayman litigation) has not occurred and its damages are nonexistent.

Pursuit's Memorandum offers nothing to alter these conclusions.  Instead, Pursuit pretends that the Deed of Settlement, which is repeatedly referenced in the Complaint and which itself states that it was intended to bring the Pursuit/Russell relationship "to an end," is irrelevant to Pursuit's claims.  Pursuit also seeks to add new theories and embellishments to its claims that are nowhere alleged in the Complaint and are meritless even if they were.  The Court should dismiss this action and allow the parties' dispute to be resolved by the Cayman court.

---

[1] Origami incorporates by reference the definitions contained in the Origami Memorandum.

**ARGUMENT**

I. **THE ACTION SHOULD BE DISMISSED BECAUSE IT WAS BROUGHT IN THE WRONG FORUM**

   A. **The Court Should Dismiss The Action Because The Forum Selection Clause Requires The Claims To Be Brought In The Cayman Islands**

As the Origami Memorandum demonstrated, Pursuit's claims are barred by the forum-selection clause in the Deed of Settlement. Origami Mem. at 9-12. Pursuit's sole argument in opposition is that its claims are based not on the Deed of Settlement, but on the Governing Documents. Pursuit Mem. at 33-35.[2] That contention might be plausible if the Deed of Settlement's forum-selection clause were limited, for example, to claims "to enforce this agreement." It is much broader, however, and applies to "any disputes arising in connection with this Agreement." Young Decl. Ex. E ¶ 15. The current dispute plainly arises in connection with the Deed of Settlement.

The Complaint is loaded with allegations concerning the Deed of Settlement that make clear that the assignment of Russell's rights under the Deed of Settlement is the sole premise of Pursuit's breach of contract and tort claims. *See* Origami Mem. at 11. Indeed, if the Deed of Settlement did not exist, neither would any of Pursuit's claims. Were it not for the Deed of Settlement, there would be no assignment of Russell's claims thereunder (the basis for Pursuit's contract and tort allegations) and no Cayman litigation concerning the Deed of Settlement claims assigned to Origami (the basis for Pursuit's damages allegations). Pursuit cannot ignore the allegations in its Complaint and pretend that the Deed of Settlement is of no consequence to this action.

---

[2] In a footnote, Pursuit contends that enforcement of the forum-selection clause would be unreasonable because a jury trial and punitive damages would not be available in the Cayman Court. Pursuit Mem. at 35, n. 7. But forum selection clauses are designed not only for convenience, but also to limit the potential remedies available in the case of breach. These limitations are no reason to allow Pursuit to escape an agreement it entered into freely.

### B.     The Action Should Be Dismissed Based On Foreign-Comity Abstention

With respect to foreign-comity abstention, Pursuit contends that this is not an "extraordinary" case because parallel proceedings between similar parties with similar issues are common.  Pursuit Mem. at 42.  Pursuit, however, omits the details.  What makes this case extraordinary is that Pursuit waited until the Cayman litigation had been underway for nearly a year and a half and was trial ready before it filed this action claiming that the Cayman litigation is a tort.  Moreover, the issues in the two actions are not only "similar," they are *identical*.  Pursuit's core claim in this action is that the Deed of Assignment is invalid because it violated anti-transfer provisions.  That is precisely what is at issue in the Cayman litigation, as Pursuit admits.  *See* Pursuit Mem. at 42.  There may be *additional* issues in the Cayman litigation that have no bearing on this action.  But the fact is that the core issue to be decided here will be decided by the Cayman judge first.

Further, while Pursuit is correct that it did not assert tortious interference claims in the Cayman litigation, it does not contend that it was precluded from doing so.  Regardless, the tortious interference claims (which are unripe, as discussed below) rise or fall based on the validity of the assignment and Pursuit's success or failure in the Cayman litigation.  Finally, the fact that the Russell defendants are not currently parties to the Cayman litigation is of Pursuit's own doing.  Pursuit sought, and obtained, leave to add the Russell defendants as parties.  It offers no excuse why it limited its counterclaims in the Cayman litigation to "rectification," instead of asserting a breach of contract counterclaim, or why it later dismissed the Russell defendants from the Cayman litigation.

### C. The Court Should Dismiss The Action Based On The Doctrine Of Forum Non Conveniens

Pursuit's arguments regarding forum non convenience also are unpersuasive. Pursuit argues that its choice of forum is entitled to deference because Pursuit IM is a Connecticut resident. Pursuit Mem. at 36-37. But Pursuit ignores the fact that the other Pursuit plaintiffs are Cayman companies with Cayman principal places of business. Pursuit also expressly concedes that its choice of forum was driven not by convenience but by forum shopping for a jury trial and punitive damages. Pursuit Mem. at 38. "Attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [and] the habitual generosity of juries in the United States" are reasons *not to defer* to a plaintiff's choice of forum. *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 155 (2d Cir. 2005).[3]

Pursuit also claims that Origami made an "admission" that Origami Capital and Russell Capital are not subject to process in the Cayman Islands. Pursuit Mem. at 38. That is untrue. Origami merely pointed out that the other defendants are *expressly* subject to Cayman process. Origami Mem. at 17. That does not mean that Origami Capital and Russell Capital are not *otherwise* subject to Cayman process. In fact, Cayman law expressly allows service of process on non-Cayman entities outside the Cayman Islands. *See* Hughes Decl. Ex. DFH-1.

## II. THE CLAIMS AGAINST ORIGAMI SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A. The Court Lacks Personal Jurisdiction Under The Connecticut Long-Arm Statute

The Origami Memorandum demonstrated that the applicable Connecticut long-arm statute, Conn Gen. Stat. § 52-59b(a), does not permit the Court to exercise personal jurisdiction

---

[3] Pursuit's reliance on *Henderson v. FLOORgraphics, Inc.*, 153 F. Supp. 2d 133, 137 (D. Conn. 2001), Pursuit Mem. at 37, is misplaced. Defendants do not contend that another *state* is a more convenient forum; they contend that another *country* is a more convenient forum.

4

over Origami.  Origami Mem. at 19-21.  In response, Pursuit does not contend that the "transacts any business prong" applies – and it does not.  *See* Origami Mem. at 19-20.   Pursuit instead contends that Origami's conduct meets only the "tortious act within the state" and "tortious act outside the state causing injury to person or property within the state" prongs of the long-arm statute.  Pursuit Mem. at 22-26.  This argument is flawed.

*First*, Origami did not commit, and is not alleged to have committed, a tortious act within Connecticut.  The *only* conduct that Pursuit points to is one telephone call and one email to Pursuit's principals.  The telephone call was "brief," Canelas Decl. Ex. P, and the email is hardly a "deman[d]," Pursuit Mem. at 24.  Instead of demanding payment, Origami's representative offered to "work together to resolve our differences."  Canelas Decl. Ex. P.  Such compromise offers, which policy should encourage, cannot form the basis of personal jurisdiction.

Moreover, Pursuit does not allege in its Complaint or contend in its Memorandum that the telephone call and email constitute "a tortious act." Conn. Gen. Stat. § 52-59b(a)(2).  Nor could it.  At best, Pursuit characterizes these alleged communications as "in furtherance of [Defendants'] tortious scheme."  Pursuit Mem. at 24.  This is fatal to Pursuit's argument.  As stated in *Amberbelle Corp. v. Hommell* (which Pursuit ignores), "the alleged tortious act must have actually occurred in Connecticut."  272 F. Supp. 2d 189, 195 (D. Conn. 2003) (dismissing tortious interference claim for lack of personal jurisdiction where the defendants contacted the plaintiff's employee while he was "still employed in Connecticut").  Pursuit's Memorandum reiterates that the alleged tortious acts are Defendants' attempts to receive "'payment and leverage over Plaintiffs *through litigation*.'"  Pursuit Mem. at 23-24 (quoting Compl. ¶¶ 112, 120) (emphasis added).  But Origami's so-called "demands" for payment have nothing to do with the Cayman litigation.  Pursuit would have no claim if Origami merely demanded payment

5

without filing the litigation. And Origami could just have easily filed the Cayman litigation without any prior "demand."

The cases Pursuit relies on are in fact consistent with conclusion that Origami committed no tortious act within Connecticut. Those cases deal with tortious acts that are capable of being committed over the telephone, email, or the internet, unlike a mere request for payment directed to a plaintiff. *See Doe v. Ciolli*, 611 F. Supp. 2d 216, 221 (D. Conn. 2009) (noting that "§ 52-59b(a)(2) is satisfied when a nonresident commits a tortious act within the state *by sending* a *tortious communication* into the state") (emphasis added); *Rios v. Fergusan*, 978 A.2d 592, 597 (Conn. Super. 2008) (noting "that a nonresident 'commits a tortious act within the state' for purposes of § 52-59b(a)(2) b*y sending a communication whose content may be considered tortious* directly into Connecticut") (emphasis added); *Cody v. Ward*, 954 F. Supp. 43, 44 (D. Conn. 1997) (holding that "*transmission of fraudulent misrepresentations* to a Connecticut resident by telephone and electronic mail" satisfies § 52-59b(a)(2)) (emphasis added).

*Second*, as to the "injury to person or property" prong, Pursuit glosses over the "situs of injury test" that defeats its theory of personal jurisdiction. Pursuit now contends that the "situs of injury" occurred in Connecticut because Origami's telephone call and email were "in furtherance of the tortious conduct." Pursuit Mem. at 25. But theses communications are not "the event which cause the injury." *Bacarella Transp. Services, Inc. v. J.M. Logistics, LLC*, 3:11-CV-00147-WWE, 2011 WL 4549400, at *4 (D. Conn. 2011). Rather, the filing and prosecution of the Cayman litigation is what allegedly cause the injury.

### B. The Exercise Of Jurisdiction Over Origami Would Not Comport With Due Process

Pursuit's due-process arguments similarly fail. As with its long-arm argument, Pursuit premises its minimum-contacts analysis solely on the single email and single telephone call that

allegedly reached it in Connecticut. Pursuit Mem. at 28-29. As the cases cited in Origami's Memorandum demonstrate, and Pursuit does not distinguish, such communications are insufficient. Origami Mem. at 21. The cases Pursuit relies on do not alter this conclusion.

In *Delcath Sys., Inc. v. Enney*, 2006 WL 1525986 (D. Conn. 2006), the facsimiles and emails that formed the basis for a finding of minimum contacts were precisely the communications that formed the basis for the plaintiff's defamation claim. *Id.* at *1. Similarly, in *Jane Doe One v. Oliver*, 34 Conn. L. Rptr. 634, 2003 WL 21235402 (Conn. Super. 2003), the single email sent to Connecticut that supported personal jurisdiction was the sole basis for the plaintiff's claims. *Id.* at *3. These cases stand for the unremarkable, and irrelevant, proposition that communications that themselves constitute torts may form the basis for personal jurisdiction. Here, as discussed in the previous section, Origami's communications with Pursuit were not torts and Pursuit does not allege that they were.

### III.    THE CLAIMS AGAINST ORIGAMI SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A.    The Complaint Fails To State A Claim For A Declaratory Judgment Because Pursuit Cannot Establish A Breach Of Contract

Origami has established that Pursuit's breach of contract claim against Russell (and therefore its declaratory judgment claim against Origami) fails because the Deed of Settlement contains a broad release and merger clause. Origami Mem. at 22-24. In response, Pursuit contends that the release is inapplicable to its claims and that the merger clause applies narrowly. Pursuit Mem. at 44-46. Neither argument saves Pursuit's claims.

Pursuit argues that its breach of contract claim is not one "'relating to the facts alleged in the evidence filed in support of the Originating Summons,'" Pursuit Mem. at 44 (quoting Young Decl. Ex. E at 6), which is the scope of the release. The Originating Summons (the initiating document Russell filed in support of its own Cayman lawsuit), however, covers Pursuit's

7

"Liquidation Scheme." Leverett Aff. Ex. E at 1. The liquidation scheme covered the "withdrawal and redemption process" of the Pursuit funds. Leverett Aff. Ex. D at 1. Pursuit's claims arise out of this withdrawal and redemption process – Russell's (now Origami's) right to receive additional proceeds as part of the redemption. Accordingly, the release bars Pursuit's claims.

Pursuit also asserts an implausibly narrow reading of the merger clause in the Deed of Settlement, which provides that it "supersedes and merges any and all prior agreements . . . pertaining to the subject matter herein." Young Decl. Ex. E § 6. Contrary to Pursuit's argument, the "subject matter" of the Deed of Settlement extends well beyond the process of redemption. It recites the entire relationship between Pursuit and Russell. *See* Young Decl. Ex. E at 1 (recitals). Moreover, nothing could be more connected to the "subject matter" of the Deed of Settlement than Russell's ability to assign its rights thereunder to Origami.

Further, Pursuit's reliance on *Heyman v. Com. & Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975), is misplaced. In *Heyman*, the court denied summary judgment because there was an issue of fact concerning the meaning of the term "the new building" in an insurance settlement. *Id.* at 1320. The facts were not even remotely similar to this case. Here, the merger clause is plain in its application to the facts alleged in the Complaint. Pursuit cannot create an ambiguity merely by claiming that one exists. *See Leslie Fay, Inc. v. Rich*, 478 F. Supp. 1109, 1110 (S.D.N.Y. 1979) (distinguishing *Heyman*).

Finally, Pursuit contends that issues of fact exist concerning whether Russell transferred its interest in "shares" of the Pursuit fund to Origami. Pursuit Mem. at 46-47. But Pursuit *does not dispute* the fact that, as of the execution of the Deed of Assignment, Russell *had no shares* in the Pursuit fund. *See* Origami Mem. at 25. Pursuit closes with the unsupported and self-serving

8

statement that its "decision to remove Russell from the Registry has no more legal significance than if Pursuit had chosen to retain them on the registry." Pursuit Mem. at 47. Again, Pursuit cannot escape reality by asserting unsupported arguments in its Memorandum and it cannot claim a need for discovery when all the facts are in its possession.

### B. The Complaint Fails To State A Claim For Tortious Interference Under Connecticut Law

Pursuit fails to adequately challenge Origami's showing that no tortious interference claim is stated. Pursuit Mem. at 49-54. *First*, Pursuit effectively concedes that Deed of Settlement (resulting from an adversarial litigation) cannot create a business relationship. Pursuit Mem. at 50 n.12. Further, as discussed in the previous section, no other contractual or business relationship existed following the execution of the Deed of Settlement.

*Second*, Pursuit's use of hyperbole to transform allegations concerning an ordinary claim assignment into "malice," Pursuit Mem. at 50-51, fail as a matter of law. Repeatedly calling the Cayman litigation a conspiracy to "extract payment" cannot turn an ordinary lawsuit into a malicious one. Pursuit's "characterization of the defendants' conduct as improper does not make it so." *Baer v. New Eng. Home Delivery Services, LLC*, 2007 WL 3173701, at *4 (Conn. Super. 2007).

*Third*, Pursuit contends that its tortious interference claims "do not depend on the success of the Cayman litigation," and then proceeds to describe a hypothetical scenario only where they *win*. Pursuit Mem. at 51-52. Pursuit misses the point. The cases hold that tortious interference claims based on litigation require allegations of success in the underlying litigation because if the plaintiff *loses* it will not have a claim. The same is true here. If Pursuit loses in the Cayman litigation, then Pursuit's tortious interference claims will evaporate, because such a loss would

require a finding that Russell's assignment to Origami was proper (otherwise Origami would have no claim).

*Finally*, Pursuit's contention that it has "sufficiently alleged harm" fails upon reading the Complaint. The *only* harm identified in the Complaint (including in the paragraphs cited in the Pursuit Memorandum) is the "significant legal expenses" that Pursuit allegedly incurred. Compl. ¶¶ 89, 113, 121. Pursuit's new "lost opportunity" contentions are both speculative and nowhere even hinted at in the Complaint. Pursuit does not dispute that it will be reimbursed for its legal fees and expenses if it wins in the Cayman litigation. Pursuit Mem. at 52. If Pursuit loses, it will not be entitled to them (either here or in the Cayman Islands). Either scenario would result in no damages.

## CONCLUSION

For all the foregoing reasons, Origami respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: December 10, 2012
      New York, New York

                    WOLLMUTH MAHER & DEUTSCH LLP

                    By:      /s/ William F. Dahill
                         William F. Dahill (ct 20008)
                         David H. Wollmuth (*pro hac vice* pending)
                         Michael P. Burke (*pro hac vice* pending)

                    500 Fifth Avenue
                    New York, New York 10110
                    (212) 382-3300

                    *Attorneys for Defendants Origami Capital Partners, LLC and Origami Partners III, LP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2012, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                               /s/ William F. Dahill
                                                         William F. Dahill (ct 20008)